DAVID L. SMITH V. STATE.

No. 26,204. March 25, 1953.

*J. O. Hughes,* Fort Worth, and *Jerry E. Clark,* Hillsboro, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is the unlawful transportation of minnows, as denounced by House Bill 89, Chapter 227, Acts 50th Legislature, 1947, Article 978j; the punishment, a fine of $125.00.

The constitutionality of the act is attacked. The terms thereof shall be summarized.

Section 1 makes it unlawful to transport minnows from a county where they are caught to another county.

Section 2 provides that the act shall apply only to minnows caught in twelve named counties.

Section 3 provides that the possession of more than 500 minnows shall constitute prima facie evidence of guilt under the Act.

Section 4a states that the provisions of that section shall apply to only six named counties and makes the following exceptions as to them, to-wit:

(1) Provides that the act should not prohibit the transportation for personal use of 150 minnows or less out of one of the named counties.

(2) Provides that the act should not prohibit the transportation of minnows out of one of the named counties when such minnows had been raised in a minnow hatchery.

Section 4b defines a minnow hatchery.

Section 5 sets the penalty.

The original act, Chapter 45 of the 44th Legislature, 1935, had the following provisions:

Section 1 made it unlawful to transport minnows from a county where they are caught to another county.

Section 2 provides that the act should apply only to minnows caught in eight named counties.

Section 6 stated the reasons for suspending the constitutional rule as follows:

"The fact that many people, firms and corporations domiciled in the larger centers of population of Texas, annually take large quantities of minnows from the streams of the counties wherein such minnows are bred to the extent that residents of such counties wherein such minnows are bred, are deprived of necessary minnows for fish bait, and in view of the further fact that such taking and transporting will continue unless this bill is made the law of this State. . . ."

The act was amended by Chapter 47 of the 45th Legislature, 1937. By this amendment, certain named counties were added to Section 2. The reason for suspending the constitutional rule was stated as follows:

"The fact that the streams of Parker, Jack, and Young Counties are being rapidly depleted by minnows being hauled out of there by the thousands every day for the purpose of being sold for bait and such fish life is being rapidly destroyed. . . ."

The act was again amended by Chapter 206 of the 48th Legislature, 1943. The first three sections remained unchanged, but Section 4a was added. It provided that the act should not prohibit the transportation of minnows between the named counties when such minnows had been raised in a minnow hatchery and defined the same.

The reason for suspending the constitutional rule assigned was:

"The fact that many people, firms and corporations domiciled in the various Counties named in this Act who have invested large sums of money in minnow hatcheries and are now unable to dispose of the minnows so raised in said hatcheries because of present restrictions. . . ."

The act was again amended by Chapter 227 of the 50th Legislature, 1947, so as to read as hereinbefore shown. The emergency clause reads as it did in the 1943 amendment.

We do not wish to be understood as holding that the terms

of the emergency clause are in anywise controlling in passing upon the constitutionality of an act, since such reasons relate to the necessity for haste and not to the necessity for the legislation. But such clause often provides a window through which we may glimpse the intent of the legislature. With this in mind, we observe that this legislation was, from its beginning, a conservation measure.

Appellant attacks the act as class legislation, in that, as he views it, it discriminates in favor of those who own minnow hatcheries in the named counties. As stated, the purpose of the act is to effect the conservation of the minnows *raised* in the public waters of named counties. Those that are raised in minnow hatcheries, as defined by the statute, regardless of where situated, do not constitute a part of that group of wildlife sought to be conserved. They are separate and apart from that group, since they have been raised in "a pond or series of ponds situated wholly on private, enclosed property and not connected with nor a part of any stream."

We overrule his first contention.

Appellant next declares the statute to be void in that it is a local or special law, and no notice of intention to enact it was given, as required by Section 57 of Article 3 of the Constitution.

This contention has been decided adversely to appellant by the Texas Supreme Court in Stephensen v. Wood, 34 S. W. 2d 246.

Appellant contends this act is in violation of Section 15, Article 1 of the Bill of Rights, in that the provision as to prima facie evidence of guilt deprives an accused of the right of trial by jury. We do not so view the act. This merely creates a rebuttal presumption.

Appellant's last contention is that the act is unconstitutional, in that it authorizes the taking of property without adequate compensation.

The fact that the game warden in the case at bar may have confiscated the minnows being transported in violation of the act does not make the act, which is silent on the subject, unconstitutional.

We regret that time will not permit us to discuss the cases cited by appellant. We do not deem them controlling herein.

The judgment of the trial court is affirmed.